UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| JACQUELINE A. BROWNLEE, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. CIV-13-1219-M |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration, | ) ) ) ) |  |
| Defendant. | ) ) |  |

## REPORT AND RECOMMENDATION

Plaintiff Jacqueline A. Brownlee brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R._"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her application for DIB on November 8, 2010, seeking benefits on the basis of herniated discs (L4/ L5) and bulging discs (T11/T12). R. 103-06, 150, 154. Plaintiff initially alleged a disability onset date of August 12, 2009; the SSA

recommended that this date be amended to January 1, 2010.  R. 12, 138, 150.[1]  Following denial of her application both initially and on reconsideration, Plaintiff requested a hearing before an ALJ, which was held June 8, 2012.  R. 27-39, 42-54, 59-69.  Plaintiff, represented by counsel, attended and testified at the hearing.  R. 27-37.  The ALJ issued an unfavorable decision on September 7, 2012.  R. 10-20.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2009.  R. 12; *see* 20 C.F.R. §§ 404.131, .1571.  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease; thoracolumbar degenerative disc disease, with focal right paracentral disc extrusion at T11-12; dysthymia; and major depressive disorder secondary to back pain.  R. 12-15; *see* 20 C.F.R. § 404.1520(c).  At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 16-17; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based upon all of her impairments.  R. 17-18; *see* 20 C.F.R. § 404.1520(a)(4)(iv), (e).  The ALJ found:

---

[1] In the written decision, the Administrative Law Judge ("ALJ") "concurs" with the later date but appears to rely upon the earlier date in reaching his disability determination. *See* R. 12, 20.  The written decision fails to note that Plaintiff had sought to further amend her alleged onset date to April 23, 2010.  R. 30, 201; Pl.'s Br. (Doc. No. 15) at 2 n.1.  On appeal, Plaintiff asserts that August 12, 2009, is the disability onset date.  Pl.'s Br. at 2.

> [T]he claimant has the [RFC] to perform sedentary work . . . except with occasional climbing, stooping, kneeling, crouching and crawling and no ladder, rope, scaffolds. She should avoid moderate exposure to work hazards such as dangerous machinery and unprotected heights, due to side effects of medication. The claimant can understand, remember and carry out simple instructions and should not work with the general public. She can interact appropriately with supervisors and coworkers and work with routine supervision.

R. 17; *see* 20 C.F.R. § 404.1567(a) (defining "sedentary work"). The ALJ determined at step four that Plaintiff was unable to perform any of her past relevant work: "clerk, processor, customer service, Medicaid collections specialist, home healthcare aide." R. 18-19. At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 19-20. The ALJ determined that Plaintiff's nonexertional limitations had little or no effect on Plaintiff's occupational base of unskilled, sedentary work and, therefore, Rule 202.21 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P app. 2, applied. R. 19-20. Pursuant to that Rule, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act since her application date. R. 20; *see* 20 C.F.R. § 404.1520(g).

Plaintiff's request for review of this determination by the SSA Appeals Council was denied on September 17, 2013. R. 1-4. Thus, the September 7, 2012, determination of the ALJ is the Commissioner's final decision on Plaintiff's DIB application. S*ee* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining

whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff raises two claims of error on appeal. First, Plaintiff contends that the ALJ erred as a matter of law in evaluating the medical opinions of Plaintiff's treating physician, Melvin Dean Cook Jr., MD. Pl.'s Br. at 4-9. Second, Plaintiff contends that the ALJ's analysis of Plaintiff's credibility for purposes of determining the RFC was contrary to law and not supported by substantial evidence. *Id.* at 9-15.

### A. *Whether the ALJ Properly Evaluated Dr. Cook's Opinions*

#### 1. <u>The Treating Physician Rule</u>

The Tenth Circuit long has recognized the proper analysis and assignment of weight to be given to the opinions of treating sources. "An ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (alteration and internal quotation marks omitted). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

By regulation, an examining source's opinion generally outweighs the opinion of a source who has not examined a claimant and, likewise, a treating source's opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. § 404.1527(c)(1)-(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). When considering the opinion of an "acceptable medical source" such as a claimant's treating medical doctor, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527(a)(2), (c)(2). The opinion of a treating physician must be given controlling weight if it is *both* well-supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. § 404.1527(c)(2).

Even if the medical opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. *See Watkins*, 350 F.3d at 1300. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See id.* at 1300-01; *Langley*, 373 F.3d at 1121. The ALJ is obligated to clearly state what weight *is* being given to the opinion and his or her reasoning therefor. *Watkins*, 350 F.3d at 1301. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2)-(6).

Finally, if an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

### 2. Application of Treating Physician Rule to Medical Opinions of Dr. Cook

The record in this case reflects that Plaintiff had been working at Walmart and injured her back while on the job on August 12, 2009. R. 12, 138, 205, 216. Both prior to and after that work-related incident, Plaintiff's primary care physician was Dr. Cook. The medical evidence before the ALJ showed that Plaintiff had received treatment

6

numerous times from Dr. Cook, including as early as June 2005, for various medical issues. R. 15, 31, 301-42, 393-98, 547-65, 567-69, 575-93, 633-51, 652-55. Relevant to Plaintiff's DIB application, Plaintiff received ongoing treatment from Dr. Cook for her depression, anxiety, and insomnia. *See, e.g.*, R. 316-18, 331, 332, 337, 338-39, 650-51 (reflecting prescriptions for Prozac, Xanax, and Wellbutrin). Following the August 2009 incident at Walmart, Plaintiff also saw Dr. Cook multiple times for her back pain and muscle spasms. *See, e.g.*, R. 302-05, 310-12.

On October 11, 2011, Dr. Cook completed a Physical Medical Source Statement, in which he opined, among other things, that Plaintiff could "[n]ever" climb, crawl, squat, or reach. R. 567-69. On December 14, 2010, Dr. Cook also completed a Mental Status Form in which he offered a detailed opinion regarding Plaintiff's mental status, treatment, and prognosis for recovery in light of her physical impairments. R. 301. In the Mental Status Form, Dr. Cook noted that he did not perform a formal mental status exam but diagnosed Plaintiff with lumbar disc disease and spinal stenosis at T11-T12 and also opined:

- Anxious & tearful when discussing pain & during spasms of pain.
- Impaired ability to think, reason & respond due to chronic pain.
- Pain medication interferes with ability to concentrate.
- Pain often interferes with ability to focus on a book or television[.]
- Do not expect significant improvement in condition[.]
- Patient has difficulty remembering, comprehending & carrying out simple & complex instructions due to distracting nature of back pain and pain medication that contributes to fatigue/confusion.
- Pt has significant difficulty interacting w/ coworkers & supervisors due to distracting back pain[.]

7

R. 301.

At step two, the ALJ noted that Dr. Cook was Plaintiff's primary care physician and noted some of Dr. Cook's opinions regarding Plaintiff's physical and mental condition, including some opinions stated in the Mental Status Form. R. 15. In determining the RFC, the ALJ briefly noted Dr. Cook's Mental Status Form in summarizing the medical opinion evidence:

> As for the opinion evidence, the [ALJ] gives great weight to the state agency medical consultant opinion for light work with postural restrictions, and it is consistent with the medical evidence of record . . . . However, giving some credence to the claimant's allegations of pain, the [ALJ] finds she should be limited to sedentary work. The [ALJ] gives great weight to the state agency psychological consultant opinion, but also gives weight to the primary care physician opinion in December 2010 that her pain and medication interfere with her concentration, persistence or pace. Thus, the [ALJ] has limited the claimant to simple work and no work with the general public. . . . .
>
> The [ALJ] has found no treating source opinion placing greater long-term restrictions than those of the [RFC] set forth above.

R. 18 (citation omitted).

The ALJ's sparse discussion does not sufficiently explain why Dr. Cook's treating-source opinion is not entitled to controlling weight. Although it is clear that the ALJ did not find that Dr. Cook's opinion was controlling, the ALJ failed to show that this determination was justified as required by the treating physician rule. The ALJ was required under *Watkins*, SSR 96-2p, and the applicable federal regulation to give Dr. Cook's opinion controlling weight unless the opinion was not well-supported by medically acceptable techniques or was inconsistent with other substantial evidence in

the record. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 404.1527(c)(2). The ALJ failed to make such necessary findings.

Further, assuming that the opinion was not entitled to controlling weight, the ALJ failed to explain what lesser weight the ALJ *did* allot to Dr. Cook's opinion or to adequately weigh that opinion against the prescribed factors with the required degree of deference. *See* R. 15, 18; *Watkins*, 350 F.3d at 1300-01; SSR 96-2p, 1996 WL 374188, at *4; 20 C.F.R. § 1527(c)(2)-(6). The ALJ's bare mention of "weight," even in the context of implicitly adopting Dr. Cook's opinion to some degree, simply does not constitute "good reasons," "sufficiently specific to make clear" to this reviewer the ALJ's assignment of "weight" to that treating source medical opinion. *See Watkins*, 350 F.3d 1300 (internal quotation marks omitted). The ALJ states that "no treating source opinion plac[ed] greater long-term restrictions" upon Plaintiff than those of the RFC; however, Dr. Cook's assessment of Plaintiff's physical and mental conditions includes greater restrictions than in the RFC and did not limit the assessed restrictions to a specific period. *Compare* R. 18, *with* R. 301 (Dr. Cook providing no end date for assessed mental restrictions and forecasting no significant improvement in Plaintiff's back condition). The ALJ determined as part of his RFC assessment that Plaintiff "can understand, remember and carry out simple instructions" and "can interact appropriately with supervisors and coworkers and work with routine supervision." R. 17-18. In doing so, the ALJ rejected, at least to some extent, Dr. Cook's opinion that Plaintiff "has difficulty remembering, comprehending & carrying out simple & complex instructions" and "has significant difficulty interacting w/coworkers & supervisors." *Compare id*., *with* R. 301.

The ALJ does not explain this decision. As another example, the ALJ's determination that Plaintiff is capable of "occasional climbing . . . and crawling" is inconsistent with Dr. Cook's Physical Medical Source Statement, in which Dr. Cook opined that Plaintiff could "[n]ever" climb or crawl. *Compare* R. 17-18, *with* R. 568. The RFC determination is not accompanied by any rationale for, or mention of, this discrepancy.

For the reasons outlined above, the ALJ's decision does not, as required by *Watkins* and the treating physician rule, adequately weigh Dr. Cook's opinion using the six factors outlined in 20 C.F.R. § 404.1527(c) and, moreover, does not sufficiently explain what weight was assigned to the Mental Status Form or to any of Dr. Cook's other relevant opinions. *See Watkins*, 350 F.3d at 1300-01. This lack of articulated analysis with respect to Dr. Cook's medical opinions prevents the Court from evaluating the ALJ's RFC determination without engaging in improper conjecture and post hoc reasoning. *See Zemp-Bacher v. Astrue*, 477 F. App'x 492, 495 (10th Cir. 2012) ("The court must rely on the conclusions drawn by the ALJ . . . ."); *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). The errors specified above regarding the ALJ's analysis of Dr. Cook's opinions require remand for further consideration by the Commissioner. *See Watkins*, 350 F.3d at 1300-01.

B. *Whether the ALJ Properly Evaluated Plaintiff's Credibility*

1. <u>The Required Analysis of a Claimant's Credibility</u>

The assessment of a claimant's RFC generally requires the ALJ to "make a finding

about the credibility of the [claimant's] statements about the symptom(s) and its functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). The ALJ is required to specifically and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms," such as pain and other subjective symptoms, associated with his medically determinable impairments to substantial evidence in the record. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); SSR 96-7p, 1996 WL 374186, at *1. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). The Tenth Circuit set forth in *Wilson* an illustrative list of factors that should be considered in assessing the credibility of subjective complaints (the "*Wilson* factors"), including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1589 (10th Cir. 1993); *see also* SSR 96-7p, 1996 WL 473186, at *3. "But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and internal quotation marks omitted).

11

2. The ALJ's Analysis of Plaintiff's Credibility

In assessing Plaintiff's credibility for purposes of the RFC, the ALJ first recited the applicable standards and then stated:

> The claimant alleges her back does not allow movement for prolonged time. She can get comfortable on recliner with no stress on spine. Her spine pain is intense and she gets shooting pain spasms. She does not tolerate pain medication and only takes them when pain drives her to tears. She has to lie down often and does not sleep through the night. She cannot bathe or shave daily, cannot clean house, and cannot do yard work or gardening. The medical evidence of record shows she has consistently sought treatment for back pain, has never been a candidate for back surgery and has had epidural steroid injections and nerve blocks, is prescribed pain medication including narcotic pain medication.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.
>
> The [ALJ] finds the claimant does have limitations from back pain. Resolving all doubt in favor of the claimant, the [ALJ] finds the claimant should be limited to sedentary work with the postural and mental limitations set forth above. The [ALJ] notes that there are medical statements indicating the claimant can do light exertion work. However, the [ALJ] credits the claimant's testimony and finds she cannot do light exertion work on a sustained basis.

R. 17-18.

Plaintiff contends that the ALJ erred and that his credibility determination is not based upon substantial evidence because the ALJ "failed to provide any actual explanation, tied to the relevant factors, of why [Plaintiff's] statement that she could not perform the amount of sitting required by sedentary work (or any of her other allegations) were not credible. Pl.'s Br. at 12. The undersigned agrees.

In assessing a claimant's credibility, an ALJ may not simply recite the relevant

12

factors but must "closely and affirmatively link" the findings based on those factors to substantial evidence in the record. *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). The ALJ recited the factors and essentially determined that Plaintiff was credible enough for him to believe her argument that she was incapable of light work, but not credible enough for him to believe she was incapable of sedentary work. *See* R. 17-18. Although such a conclusion is not inherently problematic, the ALJ did not sufficiently explain his underlying reasoning and factual findings. In addition to being overly conclusory, the ALJ's credibility decision is not sufficiently "linked to substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). For example, the testimony and medical evidence the ALJ cites that is relevant to the *Wilson* factors of "the nature of daily activities," "the frequency of medical contacts," and the extensiveness of Plaintiff's attempts to gain relief, both support rather than undercut Plaintiff's argument that she is unable to work at even a sedentary level. The ALJ does not cite to any contrary evidence on these points or offer sufficient rationale for disbelieving Plaintiff. *See* R. 17-18; *Wilson*, 602 F.3d at 1145 (internal quotation marks omitted). In addition, the ALJ does not clarify whether Plaintiff "has never been a candidate for back surgery" because the nature of her condition precludes effective surgery or because her condition is not sufficiently serious to warrant surgery (although the record suggests the former). R. 18; *see* R. 32-33 (Plaintiff testifying that her doctors "contemplated" surgery "but the position [the disc extrusion] was in they decided it was inoperable" and surgery "would make [Plaintiff] worse and possibly paralyze [her]"), 538 (orthopedic report from Michael Brown, MD, that Plaintiff is not a surgical candidate).

13

Further, Plaintiff's nonmedical testimony as to her pain and other subjective symptoms is not so inconsistent or incompatible with the "objective medical evidence" that the undersigned may conclusively accept the ALJ's credibility finding without engaging in improper fact-finding. *See Wilson*, 602 F.3d at 1145 (internal quotation marks omitted). The ALJ himself noted that Plaintiff's "pain and medication interfere with her concentration, persistence and pace." R. 18. The state examining physician assessed Plaintiff to have "[c]hronic low back pain" and found multiple instances of decreased range of motion in Plaintiff's back and hips due to pain. R. 358-64. Plaintiff has been prescribed numerous narcotics, muscle relaxants, anti-inflammatories, and nerve pain medications and has had injections, physical therapy, and electrical nerve stimulation treatment administered in an effort to reduce her back pain. *See, e.g.*, R. 211-13, 216-24, 295-300, 399-428, 487-96. In light of this and other medical evidence, the ALJ's failure to explain and support his credibility finding was prejudicial error.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.[2]

---

[2] At the hearing, the ALJ inquired about Plaintiff's height and weight but did not discuss the medical evidence reflecting Plaintiff's diagnosed obesity in the written decision. *See* R. 30-31, 36; *see, e.g.*, R. 612, 619. The undersigned makes no recommendation or finding as to Plaintiff's obesity but notes that Social Security Ruling 02-1p provides instructions an ALJ should follow in determining whether a claimant's obesity affects or

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 17, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 3rd day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

exacerbates other physical or mental conditions. *See* SSR 02-1p, 2002 WL 34686281, at *3-4 (Sept. 12, 2002).